<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**</u>

---

| | |
|---|---|
| RAJNIKANT PARIKH, :<br><br>Plaintiff, :<br><br>v. :<br><br>TOWNSHIP OF EDISON, MICHAEL :<br>DOTRO, SAM DOTRO, MICHAEL :<br>SCHWARZ, and JOHN DOES 1-10, each :<br>sued individually and in their official :<br>capacities, :<br><br>Defendants. : | Civil Action No. 08-3300 (JAG)<br><br>**OPINION** |

---

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on defendant Sam Dotro's motion to dismiss the

Complaint and for summary judgment ("Motion").[1]  (Docket No. 33.)  Sam Dotro ("Defendant"

or "Sam Dotro") moves to dismiss the Complaint filed by Rajnikant Parikh ("Plaintiff" or

"Parikh") for failure to timely serve process, pursuant to Federal Rule of Civil Procedure 4(m).

Defendant also moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c),

on the ground of qualified immunity.  For the reasons explained below, both bases for

Defendant's Motion are denied.

---

[1]Defendant titles the Motion, "Sam Dotro's Motion To Dismiss."  (Docket Nos. 33, 47.)
Defendant, however, argues both that the Complaint should be dismissed against Defendant, and
that summary judgment should be granted in favor of Defendant.  (<u>Id.</u>)

1

**BACKGROUND**

This Motion concerns claims made by Plaintiff against Defendant, pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), for violations of Plaintiff's First Amendment rights to petition the government for redress of grievances, and exercise freedom of speech.[2]

Some of the facts outlined below – specifically, subsections I and II – do not directly concern Plaintiff's claims against Defendant; rather, they directly pertain to Plaintiff's claims against other defendants in this case. Those subsections are included in this Opinion because they assist in understanding the context in which Plaintiff's claims against Defendant arise.

**I.      Plaintiff's July 4, 2006 Arrest**

Plaintiff was arrested on July 4, 2006, by Officer Michael Dotro ("Officer Dotro," "Michael Dotro," or "Ptl. Dotro") of the Edison, New Jersey Police Department ("EPD"). Officer Dotro is Defendant's brother.  ([Defendant's] Local Rule 56.1 Statement of Material Facts Not in Dispute ("Def.'s 56.1") ¶ 3; Plaintiff Rajnikant Parikh's Counter-Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl.'s 56.1") pt. A ¶ 3.)

Plaintiff's allegations regarding the circumstances surrounding his arrest are as follows. On the evening of July 4, 2006, Plaintiff was approached, while standing outside his apartment building, by Officer Dotro.  (Compl. ¶ 18.)  Officer Dotro asked whether a car parked nearby belonged to Plaintiff.  (<u>Id.</u>)  Plaintiff replied that the car did not belong to him.  (<u>Id.</u> at ¶ 19.) Plaintiff, upon noticing that EPD officers were ticketing several cars in front of the apartment

---

[2]"<u>Bivens</u> established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."  <u>Carlson v. Green</u>, 446 U.S. 14, 18 (1980).

building, remarked to a neighbor that the officers were probably issuing parking tickets because they could not identify the individuals who were setting off fireworks for Independence Day.  (Id. at ¶ 20.)

Officer Dotro, upon hearing Plaintiff's remark, approached Plaintiff in a hostile manner, swearing and verbally abusing him.  (Id. at ¶ 21.)  Officer Dotro proceeded to grab Plaintiff by his neck, push him onto the hood of a police car, and punch him on his head and back.  (Id. at ¶ 22.)  Officer Dotro then handcuffed Plaintiff and pushed him toward a group of EPD officers standing nearby.  (Id.)  Plaintiff fell to the ground, and Officer Dotro kicked and punched Plaintiff on his head and body.  (Id.)  EPD officers John Does 1-5 joined in the attack, kicking and punching Plaintiff as he lay on the ground.  (Id.)

Officer Dotro took Plaintiff to the police station, where he was held until the early morning of July 5, 2006.[3]  (Id. at ¶ 24.)  Upon his release, Plaintiff immediately sought medical treatment at the emergency room of the JFK Medical Center in Edison, New Jersey.  (Id. at ¶ 25.)

## II.    Plaintiff's Complaint To EPD Internal Affairs Unit

On July 5, 2006, after receiving treatment for his injuries, Plaintiff filed a complaint with the EPD against Officer Dotro and EPD officers John Does 1-5 for their allegedly unlawful assault.  (Id. at ¶ 26.)

Officer Dotro was notified that Plaintiff filed a complaint against him (Officer Dotro).  (Pl.'s 56.1 pt. B ¶ 3.)  On July 10, 2006, Officer Dotro inquired about Plaintiff's arrest history through the National Crime Information Center Database ("NCIC").  (Id.)  NCIC did not indicate that Plaintiff had any criminal history, but it showed that the names "Rajnikant Parikh" and

---

[3]It is unclear whether Plaintiff was charged.

"Amit Sheth" were aliases.  (Id.)

### III.    July 24, 2006 Phone Calls

On July 24, 2006, while the EPD investigation arising from Plaintiff's July 5, 2006 complaint was still pending, Officer Dotro and Defendant spoke by telephone.  (Def.'s 56.1 ¶ 3; Pl.'s 56.1 pt. A. ¶ 3, pt. B ¶ 4.)  It is unclear who initiated the telephone call.  (See Def.'s 56.1 ¶ 3 (stating that Officer Dotro initiated the call); Pl.'s 56.1 pt. A ¶ 3 (referring to evidence that indicates Defendant may have initiated the call).)

Plaintiff was the subject of the telephone call.  (Def.'s 56.1 ¶ 3; Pl.'s 56.1 pt. A ¶ 3, pt. B ¶ 4.)  It is unclear whether the conversation was limited to Officer Dotro's concern regarding Plaintiff's aliases, or whether the call primarily concerned the possible existence of an outstanding warrant for Plaintiff's arrest.  (See Def.'s 56.1 ¶3 (Officer Dotro advised Defendant that "he had arrested an alien and had a concern regarding several aliases used by the alien"; Defendant and Officer Dotro "did not discuss the charges against the arrestee, nor did they discuss whether there was an assault or whether the arrestee, nor did they discuss whether there was an assault or whether the arrestee made any complaint against Officer Dotro"); Pl.'s 56.1 pt. A ¶ 3 (stating that discovery is necessary to determine whether the assault or complaint against Officer Dotro was discussed); Pl.'s 56.1 pt. B ¶ 4 ("In connection with the Investigation, Michael Dotro told investigators that Sam Dotro asked [Michael Dotro] if he was aware that Mr. Parikh was possibly wanted in connection with a warrant for his arrest.").)

Defendant referred Officer Dotro to a deportation officer in the United States Immigration and Customs Enforcement ("ICE") Fugitive Operations Unit.  (Def.'s 56.1 ¶¶ 1, 4; Pl.'s 56.1 pt. A ¶¶ 1, 4.)  The Fugitive Operations Unit investigates cases of suspected illegal aliens, and

4

arrests illegal aliens.  (Id.)  The deportation officer who answered the phone call was Peter

Peralta ("Peralta").  (Id.)

Peralta confirmed that a man named Amit Sheth was ordered to be deported from the

United States in 1996.  (Def.'s 56.1 ¶ 10; Pl.'s 56.1 pt. A ¶ 10.)  Plaintiff admits that he used to

go by the name Amit Sheth, and that he was ordered deported in 1996.  (Pl.'s 56.1 pt. A ¶ 10.)

Peralta stated to Officer Dotro and Defendant that Peralta would attempt to arrest Plaintiff

on an outstanding warrant for his violation of immigration law, possibly at his home on July 28,

2006.  (Pl.'s 56.1 ¶ 6.)

**IV.     Completion of EPD Investigation.**

On July 27, 2006, EPD's Internal Affairs Unit concluded its investigation into the July 4,

2006 incident described above, determining that there was insufficient evidence of brutality

against Officer Dotro regarding his July 4, 2006 arrest of Plaintiff to prove Plaintiff's allegations

of improper conduct, false arrest, and assault.  (Pl.'s 56.1 pt. B ¶ 7.)

Upset by the investigation's conclusion, the "Indian community of New Jersey"

scheduled a rally, at which Plaintiff was scheduled to speak.  (Pl.'s 56.1 pt. B ¶ 8.)  The rally was

scheduled for August 2, 2006, in front of EPD's headquarters.  (Id.)

**V.      Plaintiff's August 2, 2006 Arrest**

On either July 30 or August 1, 2006, Officer Dotro and Peralta spoke by telephone.

(Declaration of Brian H. Brick ("Brick Decl.") Ex. 11 at 2.)  Officer Dotro inquired as to the

status of Peralta's efforts to arrest Plaintiff.  (Pl.'s 56.1 pt. B ¶ 9.)  Peralta reported that he had, to

that point, been unable to arrest Plaintiff.  (Id.)  Officer Dotro informed Peralta that Plaintiff

would be at a rally scheduled for August 2 in front of EPD headquarters.  (Id.)

On August 2, 2006, Peralta went, with another (unidentified) ICE deportation officer, to

EPD.  (Def.'s 56.1 ¶ 12; Pl.'s 56.1 pt. A ¶ 12.)  Plaintiff was identified to Peralta and the other

deportation officer by members of EPD.  (Id.)  Peralta and the other deportation officer

approached Plaintiff, identified themselves, and asked him to accompany them.  (Id.)  Away from

public view, Plaintiff was handcuffed and taken into custody without incident.  (Id.)

## VI.  Relevant Procedural History

Plaintiff filed a seven-count Complaint on July 2, 2008.  (Docket No. 1.)  Count I asserts

Bivens claims against Defendant and John Does 6-10 for violations of Plaintiff's First and

Fourteenth Amendment rights.  Count VI asserts claims under the New Jersey Civil Rights Act,

N.J. Stat. Ann. § 10:6-2(c) against Defendant for violations of Plaintiff's rights under the First,

Fourth, and Fourteenth Amendments to the Constitution of the United States.[4]

Plaintiff's counsel engaged a process server to effect service of process on Defendant.

(Declaration of Ravinder S. Bhalla ("Bhalla Decl.") ¶ 2.)  On August 7, 2008, Plaintiff's counsel

received an affidavit of service from the process server indicating that Defendant had been

served.  (Id.)  The Affidavit of Service stated that, on August 7, 2008, "Margaret, Authorized

Agent," accepted service on Defendant's behalf.  (Docket No. 7.)

On November 5, 2008, counsel for both Plaintiff and Defendant attended a scheduling

conference regarding this case before Magistrate Judge Arleo ("November 5 Conference"), at

which Defendant's counsel stated that he was not entering a formal appearance on behalf of

Defendant because Defendant had not been properly served.  (Bhalla Decl. ¶ 3; Declaration of

---

[4]Counts II-V and VII are not germane to Defendant's Motion, because they do not assert any claims against Defendant.  These Counts will not be addressed here, nor will any claims against other named defendants appearing in Counts I and IV.

Daniel J. Gibbons ("Gibbons Decl.") ¶ 2.)  That date was the first on which Plaintiff's counsel became aware that Defendant was challenging service, and the first time that Defendant's counsel, or anyone else connected with Defendant, asserted that Plaintiff was required to serve the United States.  (Bhalla Decl. ¶ 4.)  Based on statements made by Defendant's counsel at the November 5 Conference, which indicated familiarity with the Complaint, Plaintiff's counsel understood that Defendant's counsel was in possession of Plaintiff's summons and Complaint.[5] (Id. ¶ 5.)

Immediately following the November 5 Conference, in the hallway outside Magistrate Judge Arleo's chambers, Defendant's counsel indicated that he would accept service on Defendant's behalf, but maintained that Plaintiff was required also to serve the United States via the Attorney General of the United States.  (Id. ¶ 6; Gibbons Decl. ¶ 5.)  Based on counsel to Defendant's apparent possession of a copy of the Complaint, Plaintiff's counsel did not believe that Defendant's counsel expected to be sent an additional copy of the summons and Complaint. (Id. ¶ 9.)

During a December 23, 2008 telephone call with Plaintiff's counsel, Defendant's counsel reiterated his willingness to accept service on Defendant's behalf, and counsel to Defendant's belief that Plaintiff was required to serve the Attorney General.  (Id. ¶ 7.)

Plaintiff's counsel sent an acknowledgment of service form to Defendant's counsel on January 14, 2009 via overnight mail, in which Plaintiff's counsel requested that Defendant's counsel confirm acceptance of service for Defendant.  (Id. ¶ 8.)  In a letter sent to Plaintiff's

---

[5]Specifically, at the November 5 Conference, Defendant's counsel stated that Defendant could not be sued as an employee of the United States Immigration of Customs Enforcement agency.  (Bhalla Decl. ¶ 5.)

counsel dated January 20, 2009, Defendant's counsel stated that he would not acknowledge proper service of the Complaint, reiterating that he would accept service on behalf of Defendant, and that Plaintiff was required to serve the United States via the United States Attorney and the Attorney General, as provided by Federal Rule of Civil Procedure 4(i)(3). (Id.)

Plaintiff's counsel and Defendant's counsel spoke by telephone on February 2, 2009. (Declaration of Monica Y. Cho ("Cho Decl.") ¶ 2.)[6] Plaintiff's counsel asked Defendant's counsel whether he would stipulate that Defendant had been properly served, because there was no dispute that Defendant's counsel already possessed copies of the summons and Complaint. (Id. ¶ 4.) Defendant's counsel would not so stipulate. (Id. ¶ 5) He indicated that service had not been properly effected because service had been delivered to Defendant's place of work. (Id.) Defendant's counsel instructed Plaintiff's counsel to send the summons and Complaint both to Defendant's counsel's office, and to the Attorney General, "so that, for the time being, we could move past the service issues." (Id.)

Plaintiff's counsel sent to Defendant's counsel copies of the summons and Complaint via overnight mail on February 6, 2009. (Id. ¶ 6.) Plaintiff's counsel also included another copy of the acknowledgment of service form, which she asked Defendant's counsel to sign and return.[7] (Id.) Also on February 6, 2009, Plaintiff's counsel sent copies of the summons and Complaint to the Attorney General via certified mail. (Docket No. 25.)

Fact discovery is scheduled to be completed by February 26, 2010. (Docket No. 57.)

---

[6]Monica Y. Cho is associated with the Law Offices of Ravinder S. Bhalla. (Cho Decl. ¶1.)

[7]It is unclear whether Defendant's counsel signed and returned the acknowledgment of service form.

Plaintiff has yet had the opportunity to depose, *inter alia*, Defendant, Officer Dotro, and Peralta.

(Brick Decl. ¶ 43.)

Defendant filed a motion to dismiss, or, in the alternative, for summary judgment, on

April 6, 2009.[8]  (Docket No. 33.)  That Motion is the subject of this Opinion.

## LEGAL STANDARDS

### I.    Motion To Dismiss

Federal Rule of Civil Procedure 12(b)(5) provides that a party may assert by motion the

defense of insufficient service of process.  The proper time for service of process is defined by

Federal Rule of Civil Procedure 4(m):

> If a defendant is not served within 120 days after the complaint is filed, the court — on
> motion or on its own after notice to the plaintiff — must dismiss the action without
> prejudice against that defendant or order that service be made within a specified time. But
> if the plaintiff shows good cause for the failure, the court must extend the time for service
> for an appropriate period. This subdivision (m) does not apply to service in a foreign
> country under Rule 4(f) or 4(j)(1).

Federal Rule of Civil Procedure 4(m) provides that a court may grant a discretionary

extension of time to effect proper service.  Boley v. Kaymark, 123 F.3d 756, 758 (3d Cir. 1997).

"The determination whether to extend time involves a two-step inquiry."  Id. (citing Petrucelli v.

Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995)).  First, "[i]f good cause exists [for a

plaintiff's failure to effect timely service], the extension must be granted"  Id. (citing Petrucelli,

46 F.3d at 1305; Fed. R. Civ. P. 4(m)).)  Second, "[i]f good cause does not exist, the district court

must consider whether to grant a discretionary extension of time."  Id. (citing MCI Telecomm.

---

[8]Defendant inartfully crafts his Motion, seeking dismissal *and* summary judgment.  (Mot.
1.)  Of course, it is not possible to grant both Defendant's motion to dismiss and for summary
judgment in this context; were this Court to grant Defendant's motion to dismiss, his motion for
summary judgment would be mooted.

Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1098 (3d Cir. 1995), cert. denied, 519 U.S. 815 (1996)).

"[C]ourts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown." Henderson v. United States, 517 U.S. 654, 662 (1996) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 4.)  "The Federal Rules thus convey a clear message: Complaints are not to be dismissed if served within 120 days, or within such additional time as the court may allow." Id. at 663.

## II.   Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . .  that would entitle [them] to a

directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003)

(quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Property, 941

F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that

party must show *affirmatively* the absence of a genuine issue of material fact:  it . . . must show

that, on all the essential elements of its case on which it bears the burden of proof at trial, no

reasonable jury could find for the non-moving party." (emphasis in original)  (internal citations

omitted).)  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . .

. the burden on the moving party may be discharged by 'showing' – that is, pointing out to the

district court – that there is an absence of evidence to support the nonmoving party's case."

Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must

establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v.

Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary

judgment cannot rest on mere allegations and instead must present actual evidence that creates a

genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v.

Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and

pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912

F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e)(2) (requiring nonmoving party to "set

out specific facts showing a genuine issue for trial").  "A nonmoving party has created a genuine

issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at

trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

Summary judgment must be granted, where,

11

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

Celotex, 477 U.S. at 322-23.

## ANALYSIS

### I.      Motion To Dismiss

Defendant moves to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil

Procedure 12(b)(5), for failure to timely serve Defendant.  Defendant argues that Plaintiff did not

properly serve Defendant until over seven months after the Complaint was filed, in violation of

Federal Rule of Civil Procedure 4(m).  Defendant's motion is denied.

The Complaint was filed on July 2, 2008.  (Docket No. 1.)  Defendant argues that

Plaintiff's first attempt at service, whereby Plaintiff left a copy of the Complaint at Defendant's

office building, is not proper service under Federal Rule of Civil Procedure 4.  (Mot. 7; Reply 1.)

Defendant further argues that Plaintiff was required to serve Defendant, pursuant to Rule 4(i),

because Defendant is an employee of the United States.[9]

---

[9]Federal Rule of Civil Procedure 4(i) governs service of the United States and its agencies, corporations, officers or employees.  Rule 4(i) provides, in relevant part:

> (2) Agency; Corporation; Officer or Employee Sued in an Official Capacity. To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.
> (3) Officer or Employee Sued Individually. To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the

Additionally, Defendant points out that, even after Plaintiff was notified, at the November 5 Conference, that his first attempt at service had been improper, he made no effort to attempt service until February 9, 2009.[10]  (Id.)  Defendant thus argues that Plaintiff cannot show good cause for failing to timely serve process, nor can he justify failing to move for an extension of time to serve before the 120-day period expired.  (Id.)  Therefore, Defendant argues that he should be dismissed from this action for failure to timely serve process.  (Id.)

Plaintiff responds that it attempted to serve Defendant, pursuant to Rule 4(e), well within the 120-day time limit prescribed by Rule 4(m).[11]  (Opp. 8.)  Plaintiff argues that Rule 4(e), not

---

United States and also serve the officer or employee under Rule 4(e), (f), or (g).
(4) Extending Time. The court must allow a party a reasonable time to cure its failure to:
(A) serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States; or
(B) serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee.

[10]Plaintiff corroborates Defendant's assertion that he (Defendant) stated that service was improper at the November 5, 2008 conference.  (Opp. 8 n.10)  Plaintiff also notes that Defendant asserted that process was not properly effected in letters sent to the Court on November 25, 2008 and to Plaintiff's counsel on January 20, 2009, and in a February 5, 2009 telephone call with Plaintiff's counsel.  (Id.)

[11]Serving process to an individual is governed by Federal Rule of Civil Procedure 4(e):
Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by:
(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
(2) doing any of the following:
(A) delivering a copy of the summons and of the complaint to the individual personally;
(B) leaving a copy of each at the individual's dwelling or usual place of abode

Rule 4(i), governs service of Defendant, because Plaintiff's claim against Defendant is not based on conduct in connection with duties performed on the United States' behalf.  (Id. (citing Laffey v. Plousis, No. 05-2796, 2008 WL 305289, at *6 n.2 (D.N.J. Feb. 1, 2008)).)  Plaintiff argues that it properly served Defendant, pursuant to Rule 4(e), on August 20, 2008, just over one month after Plaintiff filed the Complaint.  (Opp. 7-8; Docket No. 7.)  Plaintiff's affidavit of service, filed with this Court on that date, states that "Margaret, Authorized Agent" accepted service on Defendant's behalf on August 7, 2008.  (Docket No. 7.)

In the alternative, Plaintiff argues that, even if it did not properly serve Defendant on August 20, 2008, counsel to Defendant agreed to accept service on his behalf immediately after the November 5 Conference.  Plaintiff argues that counsel's agreement to accept service at that time waives defects as to both the timing and manner of service on Defendant.  (Opp. 9. (citing Laffey, 2008 WL 305289, at *6).)

As a preliminary matter, this Court notes that Rule 4(e), not Rule 4(i), governs the proper manner of service on Defendant.  In Armstrong v. Sears, 33 F.3d 182, 187 (2d Cir. 1994), the Second Circuit held that plaintiffs filing a Bivens action need only perform service, pursuant to Rule 4(e).  While the Third Circuit has not yet addressed the issue of which rule governs service of a United States employee being sued in a Bivens action, this Court is persuaded by the Second Circuit's reasoning in Armstrong that service, pursuant to Rule 4(e), governs Plaintiff's Bivens claim against Defendant.  Laffey, 2008 WL 305289, at *6 n.3.

---

with someone of suitable age and discretion who resides there; or
(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.
The New Jersey rule governing service of process upon an individual is akin to the three options outlined in Rule 4(e)(2).  See  N.J. Stat. Ann. § 4:4-4.

The first question for this Court to address is whether Plaintiff properly effected service on August 7, 2008.

Rule 4(e)(2)(C) provides that service is effected when a copy of the summons and complaint is delivered to an agent authorized by appointment or by law to receive service of process.  The question, therefore, is whether "Margaret, Authorized Agent," is an agent authorized to receive process on behalf of Defendant.

Plaintiff has the burden to prove that an agency relationship existed between "Margaret, Authorized Agent," and Defendant.  Dunkley v. Rutgers, No. 06-5762, 2007 WL 2033827, at *2 (D.N.J. July 11, 2007).  Plaintiff puts forward scant evidence that "Margaret, Authorized Agent," was an agent authorized to accept service on behalf of Defendant.  Plaintiff argues that the Affidavit of Service (Docket No. 7) unequivocally demonstrates that he served Defendant's authorized agent.  While the Affidavit clearly indicates that process was delivered to an authorized agent, it does not declare for whom the recipient is authorized to receive process. (Id.)  Even if "Margaret" stated that she was authorized to accept service on Defendant's behalf, apparent authority may not be created by acts of the agent.  Laffey, 2008 WL 305289, at *5.

Plaintiff does not argue that process was otherwise properly served within the 120-day limitation period.  As such, this Court finds that process was not properly served within the time limit prescribed by Federal Rule of Civil Procedure 4(m).

Thus, this Court must consider the effect of counsel to Defendant's agreement, following the November 5 Conference, to accept service on Defendant's behalf.  That agreement, and the subsequent delivery of service by Plaintiff to Defendant's counsel, "forecloses the ability of [Defendant] to argue for dismissal successfully based on insufficient service of process."  Laffey,

15

2008 WL 305289, at *6.

Defendant argues that his counsel's acceptance of service did not relieve Plaintiff of the requirement to serve the Attorney General of the United States. As discussed above, Federal Rule of Civil Procedure 4(e) governs the proper manner of service on Defendant. Pursuant to Rule 4(e), Plaintiff is solely required to serve Defendant.[12]

Frankly, this Court is confused by Defendant's motion to dismiss for failure to effect timely service. It wonders why Defendant made this motion, after agreeing to accept service, and after Plaintiff perfected service under both Federal Rules of Civil Procedure 4(e) and 4(i). Put another way, this Court does not understand why Defendant's counsel agreed to accept service if Defendant planned to move for dismissal on this ground.

Defendant's motion to dismiss for failure to effect timely service, pursuant to Federal Rule of Civil Procedure 4(m), is denied.

## II.    Motion For Summary Judgment

Defendant also moves for summary judgment on the ground that he has qualified immunity from the claims asserted against him by Plaintiff. The motion is denied.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The qualified immunity

---

[12]In the alternative, pursuant to Federal Rule of Civil Procedure 4(i), Plaintiff served the Attorney General of the United States on February 6, 2009. (Docket No. 25.) The purpose of service on the Attorney General is to notify him, and the Department of Justice, of the Complaint. This requirement is not meant as a jurisdictional impediment, especially where, as here, the Attorney General is not a party to the case.

standard 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" Giles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).  "Qualified immunity is not the law simply to save trouble for the Government and its employees; it is recognized because the burden of trial is unjustified in the face of a colorable claim that the law on point was not clear when the official took action, and the action was reasonable in light of the law as it was."  Will v. Hallock, 546 U.S. 345, 353 (2006).

In order to defeat a claim of qualified immunity, a plaintiff must show that the defendant's conduct violated a constitutional right clearly established in light of the specific facts.  Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled on other grounds by Pearson, 129 S. Ct. 808).  The inquiry as to whether qualified immunity applies "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'"  Pearson, 129 S. Ct. at 822 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)).  "[T]he court should ask whether the [defendant] acted reasonably under settled law in the circumstances."  Hunter v. Bryant, 502 U.S. at 228.

As a preliminary matter, this Court notes that Plaintiff has a well-established right to be free of retaliation for protected speech.  The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech, or the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. Amend. I.  Among Plaintiff's well-established First Amendment rights are the right to petition the Government to seek redress of grievances, as he did by filing an internal affairs complaint with the Edison Police Department against Officer Dotro, and the right

to call publicly for the suspension of Officer Dotro.  Id.  This Court can think of few other constitutional rights as well-established as these.

Therefore, this Court must inquire into the objective reasonableness of Defendant's actions, assessed in light of Plaintiff's clearly established First Amendment rights.  Pearson, 129 S. Ct. at 822.

The gravamen of Defendant's qualified immunity argument is that Plaintiff cannot demonstrate that any constitutionally protected conduct was a substantial motivating factor of Defendant's actions to assist his brother in determining Plaintiff's immigration status.[13]  (Mot. 10.)  If Plaintiff cannot make such a showing, he will not have demonstrated that his constitutional right was clearly established, in the eyes of Defendant, in light of the specific facts. Saucier, 533 U.S. at 201.  As such, no reasonable person in Defendant's place would have known that his or her conduct would violate clearly established statutory or constitutional rights, and that

---

[13]Defendant's argument appears to confuse the qualified immunity inquiry, with what Plaintiff must establish to make out a claim for conspiracy to violate his First Amendment rights.

As part of Defendant's qualified immunity argument, he states that, in order to prevail on a claim that he retaliated against Plaintiff for constitutionally protected conduct, Plaintiff must show that he engaged in constitutionally protected conduct, and that the protected activity was a substantial or motivating factor in Defendant's decision to assist Officer Dotro in ascertaining Plaintiff's immigration status.  (Mot. 11 (citing Ambrose v. Township of Robinson, Pa., 303 F.3d 488, 493 (3d Cir. 2002)).)

Defendant argues that Plaintiff does not put forward any facts supporting his argument that Defendant's decision to assist Officer Dotro in ascertaining Plaintiff's immigration status was motivated by Plaintiff's protected First Amendment activity.  Specifically, Defendant argues that uncontradicted facts establish that he was not aware that Plaintiff was engaged in constitutionally protected activity.  Thus, Defendant states that he cannot be held liable.

This argument relates to the substance of Plaintiff's claim, rather than Defendant's qualified immunity from that claim.  However, to the extent that this argument asserts an alternative ground for granting Defendant's motion for summary judgment, it, too, is denied. The same genuine issues of material fact that prove fatal to Defendant's qualified immunity argument, detailed below, also doom the summary judgment motion.  Specifically, the so-called "uncontradicted facts" on which Defendant's substantive argument relies are, in fact, in dispute.

qualified immunity would apply.  Pearson,129 S. Ct. at 815.

The fatal flaw with Defendant's argument, however, is that the facts that he claims to be

"uncontradicted" are, in fact, at issue.  In his Motion, Defendant declares:

> The uncontradicted facts are that Sam Dotro received a phone call from his brother, a law
> enforcement officer, seeking to determine whether someone he arrested was an illegal
> immigrant using aliases.  Sam Dotro referred [Officer Dotro] to a Deportation Officer . . .
> . Sam Dotro did not know the name of the person his brother arrested, nor any of the
> circumstances that led to or followed the arrest.  He knew of no complaints or other
> constitutionally protected activity by Parikh.  He  had no part in the investigation of
> Parikh's immigration status, nor any role in the decision to arrest him after his illegal
> status became known.

(Mot. 11-12.)  Contrary to Defendant's assertion, however, a number of the facts asserted as

"uncontradicted" above, are in dispute.

Plaintiff points to evidence that it was Defendant who informed his brother that Plaintiff

may have a warrant for his arrest.  The Edison Police Department Internal Affairs Divison's own

final review of information gathered regarding the events surrounding the second arrest of

Plaintiff states:

> On July 24, 2006 Assistant District Attorney Sam Dotro contacted his brother Ptl.
> Michael Dotro of the Edison Police Department to inform him that recently arrested
> Rajnikant Parikh is possibly wanted for immigration violations by U.S. Immigration and
> Customs.  A.D.A. Dotro advises his brother Michael Dotro that he will make inquiries
> with the Fugitive Unit and get back to him.

(Brick Decl. Ex. 11:1; see also Brick Decl. Ex. 8:3 ("Ptl. Dotro stated that on or about July 24,

2006 he spoke to his brother Sam Dotro, who is currently employed by the US Immigration and

Customs Enforcement Agency as an Assistant District Attorney.  Sam Dotro asked if [Ptl. Dotro]

was aware that the guy he arrested on July 4th could possibly have a warrant for his arrest."); Ex.

9:3 ("[W]e re-interviewed Ptl. Michael Dotro who also clarified that his brother Sam Dotro[,

who] is an Assistant District Attorney with ICE[,] initiated the conversation regarding the possibility of this warrant.").)

This evidence creates a genuine issue as to material fact, i.e., whether Defendant made or received the telephone call, and whether, at the time of the call, Defendant knew the identity of Plaintiff, the circumstances of Plaintiff's arrest, or that Plaintiff was involved in constitutionally-protected activity.  These facts are material because, if Defendant initiated the telephone call, knew Plaintiff's identity at that time, knew about the circumstances of Plaintiff's arrest at that time, or knew of Plaintiff's constitutionally-protected activities at that time, a reasonable jury could find that Defendant may have assisted Officer Dotro in ascertaining Plaintiff's immigration status to help retaliate against Plaintiff's First Amendment activities targeting Officer Dotro.  See Anderson, 477 U.S. at 248 ("A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.")

Additionally, a reasonable person in Defendant's place may have known, if Plaintiff's facts are credited, that his or her conduct would violate clearly established statutory or constitutional rights.  In that circumstance, qualified immunity would not apply.  Pearson,129 S. Ct. at 815.

Defendant protests that this Court should not credit the documents relied upon by Plaintiff because he does not demonstrate that the allegations therein are based on personal knowledge.  (Reply 3.)  Defendant cites Blackburn v. United Parcel Serv., 179 F.3d 81, 95 (3d Cir. 1999) for the proposition that "a hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion."

This Court cannot make a determination on the admissibility of purported hearsay at this juncture.  The investigative reports on which Plaintiff relies, albeit compilations of statements made by many people, are principally a result of interviews conducted by law enforcement officers.  These officers will be available for testimony at trial.  More important for this Court's current consideration is the fact that none of the officers whose testimony is featured in the investigative reports have been presented for deposition or general written discovery.[14]

The investigative reports, even in their current state, create genuine issues of material fact as to what Defendant knew about Plaintiff – including his identity, the circumstances of his arrest, and his post-arrest protected activities – when Defendant assisted his brother in ascertaining Plaintiff's immigration status.  Defendant's motion for summary judgment is denied.[15]  Celotex, 477 U.S. at 322-23.

_____

[14]Among the parties yet to be deposed are Officer Dotro – who is credited as the source of most of the information in the investigative reports relied upon by Plaintiff – Defendant, and Peralta.  (Opp. 28.)

[15]As an independent and alternate ground for denying summary judgment, Plaintiff requests that this Court should defer its resolution, pursuant to Federal Rule of Civil Procedure 56(f), until Plaintiff has had a fair opportunity to obtain discovery that will directly bear both on Defendant's qualified immunity claim and the retaliation claim asserted against him.  (Opp. 27-30.)  Plaintiff seeks to depose Defendant, Officer Dotro, EPD officer Michael Schwarz, Peralta, Jason Wilkes, and Lt. Ron Mieczkowski, all of whom Plaintiff alleges were directly involved in the events leading up to Plaintiff's August 2, 2006, arrest.
     Defendant objects to Plaintiff's Rule 56(f) request on the ground that he (Plaintiff) is not entitled to harass a government official with discovery.  (Reply 4.)  Defendant accuses Plaintiff of hoping for "a 'Perry Mason Moment,' where a witness abandons his sworn testimony and concedes his guilt."  (Id.)  In addition, Defendant cites to Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (quoting Siegert v. Gilley, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment)), which states that "the basic thrust of the qualified-immunity doctrine is to free [government] officials from the concerns of litigation, including 'avoidance of disruptive discovery.'"
     Because this Court denies Defendant's summary judgment motion, Plaintiff's 56(f) request is denied, as moot.  However, the implication that government officials should not be

**CONCLUSION**

Defendant's motion to dismiss Plaintiff's Complaint for failure to timely effect service on Defendant, pursuant to Federal Rule of Civil Procedure 4(m), is denied.  Defendant's motion for summary judgment on the basis of qualified immunity is also denied.  Because Defendant's motion for summary judgment is denied, Plaintiff's request, pursuant to Federal Rule of Civil Procedure 56(f), is denied, as moot.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

December 29, 2009

---

subjected to legitimate, relevant discovery is absurd.

Therefore, while Plaintiff's 56(f) motion is moot, this Court orders that Magistrate Judge Arleo schedule a conference to address the extent and scope of additional discovery necessary to prosecute, and defend, this case.